## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CAROLYN PORTER,** *on behalf of* **)** <br> *herself and all others similarly situated,* **)** <br> **)** <br> **Plaintiff,** **)** <br> **)** <br> **vs.** **)** <br> **)** <br> **WEST SIDE RESTAURANT, LLC,** **)** <br> **TAYSSIR ISSA,** **)** <br> **)** <br> **Defendants.** **)** <br> _____**)** | **Case No. 13-1112-JAR-KGG** |

### MEMORANDUM AND ORDER

Plaintiff brings this putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), against Defendant West Side Restaurant, LLC ("West Side") and Tayssir Issa, doing business as IHOP, located at 515 S. Ridge Road, in Wichita, Kansas, claiming violations of the FLSA's minimum wage and overtime pay requirements.  Specifically, Plaintiff alleges that she was not informed of the restaurant's tip credit, and that its tip pool policy is invalid under the FLSA.  This matter is before the Court on the following motions: Defendants' Motion for Summary Judgment (Doc. 44); Plaintiff's Motion to Strike Reply (Doc. 57); Plaintiff's Motion for Conditional Certification (Doc. 31); and Defendants' Motion to Strike Consent (Doc. 42).  For the reasons explained below, Plaintiff's motion to strike the summary judgment reply is denied and Defendant's motion for summary judgment is denied.  Proceeding to the conditional certification motion, the Court grants Plaintiff's motion to conditionally certify the class defined in her motion, and denies Defendants' motion to strike Alycia Geraci's consent to opt-in.

### I.     Procedural History

Because this case seeks to conditionally certify a collective action under § 216(b) of the FLSA, it was placed on a dual-phase discovery track. Phase 1 of discovery was completed on November 15, 2013, and was to include issues relating to the named plaintiff, and issues involved in the conditional certification of a putative class, including but not limited to whether Plaintiff is similarly situated to other servers during the statutory period, and policies, practices, and procedures applicable to servers.[1] Soon after the initial scheduling order was entered, Plaintiff filed the Declaration of Alycia Geraci,[2] an opt-in plaintiff in this action.

Upon completing Phase 1 of discovery, Plaintiff filed her motion for conditional certification of a class composed of:

> all Servers and other persons with similar job duties and compensation structures, employed by Defendant West Side Restaurant, LLC, at the IHOP located at 515 S. Ridge Cir. Wichita, KS, 67209, within three years from the date of certification, to the present, who were not paid all minimum wages and overtime due and owing.

Defendant responded to the motion for conditional certification and filed a motion for summary judgment, arguing there is no genuine issue of material fact that the named Plaintiff, Ms. Porter, was compensated and provided notice in compliance with the FLSA's tip pooling requirements.

In her summary judgment response, Plaintiff argued that Defendants violated the FLSA by requiring their servers to pay a portion of their tips to expediters who did not customarily and regularly receive tips, and by failing to notify its servers of certain information required for the employer to take a tip credit against the servers' minimum wages. On summary judgment, Plaintiff relied on the deposition testimony of West Side's Rule 30(b)(6) deponent, Tayssir Issa

---

[1] *See* Doc. 28.

[2] Doc. 16.

("Tayssir"), particularly in support of her contention that the servers were not notified that their pay would be at least $7.25 per hour.  In their summary judgment reply, Defendants rely on several submissions in an effort to clarify statements Tayssir made in that deposition: (1) an errata sheet Tayssir Issa completed after receiving a copy of the deposition transcript; (2) declarations by Tayssir Issa completed in preparation for summary judgment; and (3) the declaration of Ali Issa, Defendant's brother, who is also the Director of Operations of the Ridge Road IHOP.  Plaintiff asks the Court to strike Defendant's reply because these three submissions are invalid attempts to modify testimony that is material to the summary judgment motion in this matter.  Because this motion to strike affects the submissions that are properly before the Court in considering Defendant's summary judgment motion, it will take up this motion before proceeding to the summary judgment motion.

## II.      Motion to Strike Summary Judgment Reply

As set forth above, Plaintiff moves to strike Defendants' reply to her response to the motion for summary judgment on the basis that it inappropriately modifies West Side's 30(b)(6) deponent's testimony.  Under Fed. R. Civ. P. 12(f), the Court may strike from a pleading an insufficient defense, or "any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike are generally disfavored because striking an entire pleading is a drastic remedy and such a  motion is often brought as a dilatory tactic.[3]  "The Court will usually deny a motion to strike unless the allegations have no possible relation to the controversy and are

---

[3]*See A.H. ex rel. Hohe v. Knowledge Learning Corp.*, No. 09-2517-DJW, 2011 WL 1766067, at *1 (D. Kan. May 9, 2011).

likely to cause prejudice to one of the parties."[4]

Plaintiff argues in her motion to strike that the entire reply brief should be stricken because it relies on submissions that invalidly change Tayssir's deposition testimony. The Court declines to strike the entire reply brief on this basis. Instead, the Court construes this motion as a motion to strike the evidence submitted by Defendants that arguably contradicts the deposition testimony at issue.

Defendants admit that Tayssir was mistakenly designated by his counsel as a Rule 30(b)(6) witness. He was deposed on August 2, 2013. He signed and attached an errata sheet to the transcript of that deposition on September 11, 2013. This errata sheet is not limited to typographical errors; it makes several substantive changes to the testimony.[5] Counsel represents that Tayssir's brother Ali Issa ("Ali"), who had been out of the country at the time of the deposition, read the transcript and identified several errors. Ali is the Corporate Director of Operations of the IHOP restaurants owned by West Side. Many of the corrections on the errata sheet state that they are corrections from Ali. Ali Issa has also filed declarations explaining certain testimony from Tayssir's deposition.

West Side designated Tayssir as its Rule 30(b)(6) deponent, to testify on its behalf. Under the rule, this designated deponent "must testify about information known or reasonably available to the organization."[6] One of the purposes of this rule is to "'curb the "bandying" by which officers or managing agents of a corporation are deposed in turn but each disclaims

---

[4]*Sellers v. Butler*, No. 02-3055-DJW, 2006 WL 2873470, at *1 (D. Kan. Oct. 5, 2006) (footnote and citations omitted).

[5]*See* Doc. 58-1.

[6]Fed. R. Civ. P. 30(b)(6).

knowledge of facts that are clearly known to persons in the organization and thereby to it.'"[7]
The designated representative must review all information reasonably available in preparing for
the deposition so that it is "a meaningful one and to prevent the sandbagging of an opponent by
conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before
the trial."[8]

> Once notified as to the reasonably particularized areas of inquiry
> for a Rule 30(b)(6) deposition, the corporation then 'must not only
> produce such number of persons as will satisfy the request, but
> more importantly, prepare them so that they may give complete,
> knowledgeable and binding answers on behalf of the corporation.'
> Any other interpretation of the Rule would allow the responding
> corporation to 'sandbag' the deposition process.[9]

Plaintiff argues that West Side should be bound by Tayssir's testimony at the deposition.
Defendants argue that Tayssir's 30(b)(6) testimony is not binding because they immediately
attempted to inform Plaintiff's counsel of the corrections to his testimony through the errata
sheet and by offering the declarations of Ali and Ben Nichols.  As such, they argue they cannot
be accused of ambushing their opponents at trial.  Regardless of the time it took to correct
Tayssir's deposition answers, it is clear that he did not provide complete and knowledgeable
answers on behalf of the corporation.  West Side admittedly designated the wrong corporate
representative and then failed to prepare that deponent as required by Rule 30(b)(6).  The Court
finds this case presents exactly what the rule seeks to avoid— "bandying" by the various agents

---

[7]*Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999) (quoting *Rainey v. Am. Forest & Paper Ass'n*, 26 F. Supp. 2d 82, 95 (D.D.C. 1998)).

[8]*Id.* (quotation omitted).

[9]*Sprint Comm'cns Co. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006) (quoting *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996)).

of a corporation who each disclaim knowledge of facts that are clearly known to persons in the organization and thereby to the corporation.  The problem here is arguably worse because Tayssir did not respond to the questions he now seeks to clarify by disclaiming knowledge of those facts.  Instead, he affirmatively responded to those questions and then explained his answers after the fact.

But even if Defendant is bound by virtue of Rule 30(b)(6) to Tayssir's deposition testimony, the Court must consider whether his subsequent attempts to explain or modify the 30(b)(6) testimony are permissible.  Under Fed. R. Civ. P. 30(e), a deponent is allowed to review and make changes to a deposition transcript, "in form or substance," and may sign a statement listing those changes and the reasons for making them.  "Rule 30(e) permits any changes to deposition testimony, *except those material changes that fail the Burns test*."[10]  The *Burns* test refers to the Tenth Circuit's decision in *Burns v. Board of County Commissioners of Jackson County*, which explains that material changes to deposition testimony under Rule 30(e) should be considered under the "sham affidavit" analysis.[11]  Under that analysis, the Court considers the following factors: "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain."[12]  Of course, this analysis also applies to any

---

[10]*Summerhouse v. HCA Health Servs. of Kan.*, 216 F.R.D. 502, 208 (D. Kan. 2003) (emphasis in original); *see also Odessa Ford, LLC v. T.E.N. Invs., Inc.*, No. 07-2161-CM, 2008 WL 3077153, *3 (D. Kan. Aug. 4, 2008).

[11]330 F.3d 1275, 1282–83 (10th Cir. 2003).

[12]*Id.* at 1282 (applying *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986)).

changes made to Tayssir's deposition testimony in his subsequently-filed affidavits.[13]   The Court therefore must first determine if the deposition changes are material.  If they are material, the Court must then apply the *Burns* analysis in deciding if the changes should be stricken.

During Tayssir's deposition, Plaintiff's counsel asked a series of questions to determine (1) the scope of the IHOP expediter's duties; and (2) whether IHOP explained the tip credit or tip pool to its servers.  The Court has no difficulty in finding that both areas of testimony are material.  As described throughout this order, key issues to be decided on the pending summary judgment and conditional certification motions include whether Plaintiff can maintain an individual or collective action against IHOP, based on her allegations that expediters should not have been included in the tip pool because they lack the requisite customer interaction, and her allegation that the servers were not informed about the tip credit.  Tayssir's testimony is material to both issues.  Yet, the record does not make clear that the errata sheet and declarations actually change this testimony.

With respect to server and expediter duties, Plaintiff relies on Tayssir's deposition testimony to support her argument that the expediter remains at the "back of the house" near the kitchen and does not interact with the customers.  Plaintiff's counsel asked Tayssir to review the IHOP employee manual, and confirm that the main job of the expediter is to "be at the pass bar, which is in the back of the house."  Tayssir responded: "Right."[14]  Also, Tayssir was asked whether the expediters "wait on any tables or are they just in the back of the kitchen?"  Tayssir

---

[13]*See Franks*, 796 F.2d at 1237.

[14]Doc. 32-2 at 178:15–22.

responded: "They don't, but they run food."[15]  On the errata sheet, Tayssir corrects his reply of

"right" on page 178 by saying that two questions were posed, and his response was only to the

first one about the expediter being at the passbar.  He clarifies that the passbar is between the

kitchen and the dining room area and not in the "back of the house."  The Court agrees that

Tayssir was asked a compound question and his answer may reasonably be construed as replying

to the first and not necessarily the second question.  The response provided in the errata sheet is

a reasonable clarification of Tayssir's answer.  Moreover, this clarification is consistent with his

testimony at page sixty-two, and with his declaration, which explains where the passbar is

located in the restaurant.[16]  Because the errata sheet and declaration attempt to clarify and not

necessarily change his deposition testimony, the Court does not find that it should be excluded

under *Burns*.  The Court will consider all of the evidence regarding the scope of the expediters'

duties to determine whether there is a genuine issue of fact about whether they were properly

included in the tip pool.

Next, Plaintiff relies on Tayssir's deposition testimony to argue that Defendants admit

that they did not inform their servers of the tip credit requirements.  During the sequence of

questions at his deposition about whether the servers are notified of the tip credit, Plaintiff's

counsel asked Tayssir questions about the employee handbook and about Exhibit 8, which was a

form that the LLC currently uses, but did not prior to the time the case was filed, that the server

fills out acknowledging that she was informed of the "tip out."  The parties took a break, and

apparently Tayssir called the IHOP restaurant and spoke to "the manager."

---

[15]*Id*. at 62:21–25.

[16]Doc. 56-2 ¶ 2. The parties do not dispute that the expediter primarily works at the passbar; they dispute whether the passbar is located in the front of the house or back of the house.

| Mr. Osman: | Just as we were coming back, Jim, you said that apparently they're not told about the tip credit. |
|---|---|
| Mr. Lawing: | It's not mentioned here in the handbook, and Ty just called his manager, who—the one he has now, and he said he didn't—he didn't bring it up. |
| The Witness: | They don't know anything about it. |
| Mr. Lawing: | They don't know about it. |
| The Witness: | See, this store, they don't know anything.  I'll make a call right now to Larkspur.  They're very aware of it.  Same CPA firm.  I'll make a call to YaYa's.  They're all aware of it, and they're signing up this sheet, but I don't know why IHOP is not.  It's neglect. |
| Mr. Osman: | |
| Q. | Would this be the same at the other two, three IHOPs you own? |
| A. | I can't answer that. |
| Q. | Okay. |
| A. | It's neglect—it's negligent from the managers, but I know our CPA . . . .[17] |

Defendant attempts to clarify this testimony in his second declaration.[18]  He states as follows:

> As my deposition was winding up, a series of questions was asked about "training about wages" (p. 179) which then became set in the context of two different documents—Exhibit 3, which was the Employee Handbook I prepared, and Exhibit 8, a form we neglected to prepare until this suit was filed.  It is signed by the server who has attempted to "opt-in" and is an acknowledgment that she was informed of the "tip out."
>
> My deposition statements were never intended to leave the impression that we were not informing new servers of the tip credit we take and of the servers' agreement to share the tips customers leave with the server who expedites when we get busy.  My statement about "neglect" deals with the fact we did not think ahead to document the fact that new servers are informed of the tip credit during orientation when they are hired, learning the specifics of how it works as they are being trained.
>
> The material at 2.4 of the handbook is merely payroll information addressing the mechanics of clocking in, how and

---

[17]Doc. 32-2 at 183.

[18]Doc. 56-2 ¶ 7.

> when employees are paid and informs employees of their
> responsibility to report tips accurately and who is responsible
> should they lose their checks.

Plaintiff submits only the specific page of testimony quoted above, and not the immediately

preceding pages.  According to Defendants, Tayssir was not answering questions about whether

the restaurant informed its servers about their tip compensation at all, but whether the Exhibit 8

form was used to document this notice.  He therefore took a break and contacted one of the

IHOP managers. Tayssir's clarification in his declaration is a reasonable explanation for his

testimony given the limited excerpt provided to the Court on this motion.  Certainly, at trial,

Plaintiff could attempt to impeach Tayssir's testimony that the servers were provided with notice

of the tip credit requirements, but a reasonable jury could believe that he was referring in his

deposition to the restaurant's neglect in documenting notice, rather than its neglect in providing

any notice at all.  The Court does not weigh credibility on summary judgment.  As such, the

Court does not view Tayssir's errata sheet or subsequent declaration as creating a sham fact

issue.  To the extent Plaintiff seeks to have this evidence stricken, her motion is denied.

In sum, Defendants' attempts to explain Tayssir's deposition testimony do not rise to the

level of a change or correction that would subject them to *Burns* scrutiny, thus they are

permissible under Rule 30(e).  Even if it they are considered material corrections, the Court finds

that the deposition transcript provided reflects confusion to which the deponent tries to explain.


**III.     Motion for Summary Judgment**

    **A.     Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[19] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[20] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[21] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[22] An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[23]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[24] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[25]

---

[19]Fed. R. Civ. P. 56(a).

[20]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[21]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[22]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[23]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[24]*Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[25]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[26]  The nonmoving party may not simply rest upon her pleadings to satisfy her burden.[27]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[28] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[29]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[30]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[31]

Where the moving defendant also bears the burden of proof,  "[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."[32]  Once the defendant makes this initial showing, "the plaintiff must then demonstrate with specificity the existence of a disputed material fact."[33]  If the plaintiff cannot meet this burden,

---

[26]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[27]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[28]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[29]*Adams*, 233 F.3d at 1246.

[30]Fed. R. Civ. P. 56(c)(4).

[31]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[32]*Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir.1997).

[33] *Id.*

12

"the defendant is then entitled to summary judgment as a matter of law."[34]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[35]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[36]

   **B.      Uncontroverted Facts**

The following facts are uncontroverted or viewed in the light most favorable to Plaintiff as the nonmoving party.  The Court does not consider arguments presented in the parties' statements of fact.

One of the restaurants owned by West Side Restaurant, LLC is the International House of Pancakes ("IHOP") located on Ridge Road in Wichita, Kansas.  Tayssir Issa is the sole member of the LLC.  Plaintiff worked as a server for this IHOP from June 12, 2012 to March 7, 2013.  Prior to her tenure at IHOP, Plaintiff worked at other restaurants and was a manager for two years at a Taco Bueno.

During her first week working at IHOP, Plaintiff was trained as a server.  The duties of a server our outlined in the IHOP 101Server Station booklet.[37]  The booklet states that the server should: (1) provide a warm and friendly welcome; (2) take the guest's order; (3) complete pre-

_____

[34]*Id.*

[35]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[36]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[37]Doc. 45-5, Ex. 2.

delivery tasks such as bringing out condiments and drink refills; (4) deliver the guest's order, which includes "ensur[ing] order is complete and that all items are properly garnished before you leave the passbar"[38]; (5) check back with the guest within two bites or two minutes; (5) follow-up by seeing if the guest has additional needs and pre-bus tables; (6) finish the encounter by offering one last opportunity to order and dropping off their check.

Customers of IHOP order their food from a menu that depicts the menu items in color. One day of the servers' three-day training is dedicated to expediting, which entails garnishing the plates of food from the kitchen at the pass bar to match closely the appearance of the food in the menu. Servers perform this function during the majority of shifts at IHOP, but 20-25% of the time, IHOP assigns a single server to be an expediter for that shift. These shifts occur during peak hours, usually on the weekends, when the restaurant is crowded and customers are waiting to be seated. This allows the servers on duty to deliver food to the diners more quickly. During these shifts, the expediter wears the same uniform as the servers who are waiting on the diners' tables.

Servers' compensation, including those who spend an entire shift expediting, is based on an hourly rate of $2.13 plus tips left by customers. The restaurant displays a Wage and Hour poster at the restaurant, informing employees of the federal minimum wage requirements. All servers at IHOP receive more than $30.00 per month in tips. IHOP uses a tip pool for its servers and expediters, including those servers who spend an entire shift as an expediter. Defendants' managers calculate the amount of money that servers must pay over to expediters on a predetermined formula; the managers then take that money from the servers and turn it over to

---

[38]*Id.* at 5.

the expediters.

## C.   Discussion

The minimum wage provision of the FLSA requires that covered employees generally must receive wages of at least $7.25 per hour.[39]  In defining "wage," the FLSA includes an exception to the minimum wage for tipped employees:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
>> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee.  The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.[40]

Defendants bear the burden of proving that they are entitled to take the tip credit.[41]

In this case, Plaintiff claims that she was not informed by IHOP of the tip credit requirement, and that IHOP's tip pool is invalid.  Defendant moves for summary judgment, arguing that there is no genuine issue of material fact about whether Plaintiff was provided with

---

[39]29 U.S.C. § 206(a).

[40]*Id.* § 203(m).

[41]*See Garcia v. Palomino*, 738 F. Supp. 2d 1171, 1177 n.34 (D. Kan. 2010); *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010).

the requisite information about IHOP's tip credit and that IHOP's tip pool is lawful under the FLSA.  In its response to the motion, Plaintiff moves for summary judgment on the basis that IHOP admitted it did not provide notice to its servers as required by the statute.

### A.    Notice

In order to be eligible to take a tip credit, "the employer must first notify the employees of the requirements of the law regarding minimum wages and of the employer's intention to take the tip credit."[42]  While the employer must inform its employees of the tip credit, it need not explain the tip credit to them.[43]

The Court agrees with Plaintiff that her application and previous experience in the restaurant business is insufficient to establish the FLSA's notice requirements:

> At best, the employee applications are evidence that these . . . employees were familiar with the use of a tip credit in the restaurant industry.  However, if this Court "were to permit Defendants to substitute their statutory responsibility for an alleged general awareness of an industry-wide practice, the notice prerequisite of section 203(m) would be satisfied in every instance, and section 203(m) would be rendered mere surplusage."[44]

Defendants must show something more than Plaintiff's past work experience in the resauarant industry, and that she expected $2.13 per hour plus tips on her job application.

It is undisputed that the restaurant displayed the Department of Labor's required minimum wage poster for its employees.  Plaintiff argues that this notice is insufficient on its

---

[42]*Kielhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1191 (D. Colo. 2012); *see also Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 298 (6th Cir. 1998); *Pedigo*, 722 F. Supp. 2d at 724; 29 C.F.R. § 531.59(b).

[43]*Kilgore*, 160 F.3d at 298.

[44]*Pedigo*, 722 F. Supp. 2d at 724 (quoting *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 809 (W. D. Tex. Sept. 30, 2008)).

own to constitute notice, citing a Department of Labor opinion letter,[45] and language from an

FLSA poster.   But several courts have found that a minimum wage poster such as the one

described by Defendants satisfies the notice requirement for taking a tip credit under the FLSA,

provided it is prominently displayed.[46]  Defendants attach a photograph of the poster's display at

the restaurant, but it was taken from a distance.[47]  There is no way for the Court to discern the

language on the poster, other than the minimum wage amount displayed in the center of the

poster in large font.  While both parties recite the poster language in their briefs, it is not

included in the uncontroverted facts, and there is no evidence from anyone with personal

knowledge about where it was displayed and whether it was displayed during Plaintiff's

employment.  Because Defendant carries the burden of proof on this issue, the Court finds that

the notice submitted on this record is insufficient to warrant summary judgment.[48]

　　　　Plaintiff argues that Tayssir admitted during his deposition that IHOP did not provide

notice of the tip credit to its servers.  As explained in denying Plaintiff's motion to strike, the

Court does not consider Tayssir's deposition answers on this point to constitute an unequivocal

admission that IHOP did not provide its servers with notice of the tip credit.  Tayssir contends

that these statements were in response to questions about a form that would document the

employees' receipt of notice of the tip credit and tip pool.  Again, given the slim record provided

---

[45]Dep't of Labor Wage & Hour Div.,  FLSA Op. Letter, 1997 WL 958300  (Jan. 21, 1997).

[46]*Torres v. Cache Cache, Ltd.*, No. 12-cv-00150, 2013 WL 1685784, at *4 (D. Colo. Apr. 18, 2013); *Davis v. B&B, Inc.*, 38 F. Supp. 2d 707, 719 (N.D. Ind. 1998) (collecting cases); *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 822 (N.D. Ill. 2011).

[47]Doc. 45, Ex. 7.  Plaintiff submits a legible copy of a Department of Labor poster along with its reply memorandum to the motion for conditional certification.  Doc. 41, Ex. A.  But there is no indication in the record authenticating this poster as the same poster that appears in the IHOP restaurant.

[48]*Accord Perez v. G&P Auto Wash Inc.*, 930 F. Supp. 2d 423, 435 (E.D.N.Y. 2013).

to the Court on summary judgment, the Court declines to find that these answers constitute admissions as urged by Plaintiff.  Moreover, Plaintiff's deposition testimony is contradicted by other evidence in the record, namely Alex Abou-Hadba's declaration, in which he states that he recalls informing Plaintiff that she would receive $7.25 per hour during her training and that at least that much would be earned by adding her tips to the $2.13 hourly rate authorized for tipped employees.  Information conveyed through a co-worker is sufficient notice under the statute.[49]  A reasonable jury could believe this testimony and find that Plaintiff was informed about the tip credit.  For these reasons, the Court must also deny Plaintiff's motion for summary judgment on the issue of notice.

### B.  Validity of the Tip Pool

Defendant argues that the Court must enter summary judgment that the IHOP tip pool was valid under the FLSA, citing cases that find expediters are validly included in a restaurant's tip pool.  Plaintiff makes clear in her brief that she does not challenge tip pooling for servers who expedite their own orders at IHOP.  Instead, she challenges the tip pool only for those shifts where the server engages in the occupation of expediter for the entire shift.  The statute explains that it should not be construed to "prohibit the pooling of tips among employees who customarily and regularly receive tips."  Defendants contend that because the expediter occupation is performed exclusively by servers, they "customarily and regularly receive tips."

The parties agree that the Department of Labor's regulation on dual jobs applies here:

> An employee who receives tips, within the meaning of the Act, is a "tipped employee" under the definition in section 3(t) when, in the occupation in which he is engaged, the amounts he receives as tips

---

[49]*Davis*, 38 F. Supp. at 719.

customarily and regularly total "more than $30 a month." An employee employed in an occupation in which the tips he receives meet this minimum standard is a "tipped employee" for whom the wage credit provided by section 3(m) may be taken in computing the compensation due him under the Act for employment in such occupation, whether he is employed in it full time or part time. An employee employed full time or part time in an occupation in which he does not receive more than $30 a month in tips customarily and regularly is not a "tipped employee" within the meaning of the Act and must receive the full compensation required by its provisions in cash or allowable facilities without any deduction for tips received under the provisions of section 3(m).

. . . .

(e) Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips [50]

It is undisputed that Plaintiff and all other IHOP servers earn more than $30 per month in tips.

However, if Plaintiff is dually employed as an expediter and that occupation is not a tipped

occupation, no tip credit should be taken for her hours spent on expediter shifts and she should

be paid the minimum wage for those hours.  Again, the Court is mindful that Plaintiff only

challenges the tip pool with respect to those employees who are normally servers, but who work

---

[50]29 C.F.R. § 531.56(a), (e).

occasional full shifts as expediters.  There is no issue here about the time that servers spend during their server shifts garnishing plates or otherwise performing expediter duties. Whether the expediter duties at Defendants' IHOP restaurant are tip-producing is the issue in this case.

First, the Court rejects Defendant's argument that there is a "precedent" in the caselaw that the expediter position at restaurants is a tipped occupation.  All of the cases referenced by the parties on summary judgment contain fact-specific inquiries about this occupation and whether the particular job duties for each are tip producing.  This case is no different.

The case law suggests that direct customer interaction is a relevant factor in determining whether an employee "regularly and customarily receives tips" and therefore can participate in a mandatory tip pool.[51]  For example, in *Kilgore*, the Sixth Circuit looked at the actual job duties of the defendant restaurant's hosts and hostesses and found sufficient customer interaction to qualify as an occupation that has traditionally generated tips.[52]  The court found that the hosts' duties of greeting customers, supplying them with menus, and seating them at their tables was more than a "de minimis interaction with the customers," distinguishable from employees who work in the kitchen or as a janitor, and who do not interact directly with customers.[53]  In *Myers*, the Sixth Circuit considered whether "salad preparers" should be considered tipped under § 203(m).  Because they had no direct contact with the diners, "worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as food preparation or

---

[51]*Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 231 (5th Cir. 2011); *Myers v. Cooper Cellar Corp.*,192 F.3d 546, 550 (6th Cir. 1999); *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 298 (6th Cir. 1998); *Townsend v. BG-Meridian, Inc.*, No. 04-1163-F, 2005 WL 2978899, at *6 (W.D. Okla. Nov. 7, 2005); *Giuffre v. Marys Lake Lodge, LLC*, No. 11-cv-377-PAB, 2012 WL 448806, at *2–3 (D. Colo. Sept. 28, 2012); *Elkins v. Showcase, Inc.*, 704 P.2d 977, 989 (Kan. 1985).

[52]*Kilgore*, 160 F.3d at 301–02.

[53]*Id.*

20

kitchen support work, they could not be validly categorized as 'tipped employees.'"[54]

There is a genuine issue of material fact in this case about the degree of customer interaction the expediter job entailed.  Defendants submit evidence that the expediters delivered food to the diners' tables, a task that clearly involves customer interaction.  Conversely, Plaintiff points to evidence that the expediter remained at the pass bar, which divided the kitchen from the dining room of the restaurant.  The parties dispute whether the pass bar is considered to be in the front of the house or the back of the house, and they dispute whether the expediter remains at the pass bar through her shift.  A reasonable jury could believe Plaintiff's evidence that the expediter remains at the passbar and only delivers food, at best has de minimis customer interaction.  Accordingly, summary judgment is denied on this issue.

## IV.    Motion for Conditional Certification

### A.    Standard

An action under the FLSA may be brought "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[55]  Unlike a class action under Federal Rule of Civil Procedure 23, to participate in an FLSA collective action, all plaintiffs must "give[ ] [their] consent in writing to become such a party," and it must be "filed in the court in which such action is brought."[56]

Before notice is sent to putative plaintiffs to inform them of the pending action, it must be conditionally certified as a collective action.  The court may certify an opt-in collective action so

---

[54]*Myers*, 192 F.3d at 550–51.

[55]29 U.S.C. § 216(b).

[56]*Id.*

long as the aggrieved employees are similarly situated.[57]  Section 216(b) does not define

"similarly situated."  The Tenth Circuit has approved an *ad hoc* case-by-case basis for

determining whether employees are "similarly situated" for purposes of § 216(b).[58]  This

involves a two-step inquiry.[59]  The first step occurs at the "notice stage" of the proceedings.

Here, the court determines if certification is proper for purposes of sending notice of the action

to potential collective action members.[60]  At this stage, the court "requires nothing more than

substantial allegations that the putative class members were together the victims of a single

decision, policy or plan."[61]  This standard is very lenient and typically results in conditional

certification.[62]

    After discovery is complete, defendants may file a motion to decertify, and the court then

applies a stricter standard to assure that plaintiffs are actually similarly situated.[63]  During this

second stage, the court reviews a number of factors, including "(1) disparate factual and

employment settings of the individual plaintiffs; (2) the various defenses available to defendant

which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and

---

[57]*Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102, 1105 (10th Cir. 2001).

[58]*See id.*

[59]*Id.*

[60]*Id.* at 1102.

[61]*Id.* (alterations omitted); *Gieseke v. First Horizon Home Loan, Corp.*, 408 F. Supp. 2d 1164, 1166 (D. Kan. 2006) (citations omitted).

[62]*Thiessen*, 267 F.3d at 1103*; Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007) (citing *Gieseke*, 408 F. Supp. 2d at 1166).

[63]*Thiessen*, 267 F.3d at 1102–03.

(4) whether plaintiffs made the filings required [] before instituting suit."[64]

## B.    Discussion

Plaintiff's motion is before the Court at the notice stage of review.  The parties have not yet completed discovery.[65]  Furthermore, the scheduling order only provides deadlines for limited discovery preceding the motion for conditional certification, and a trial date has not yet been set.  The Court therefore applies a lenient notice-stage analysis, reviewing the allegations in Plaintiff's Complaint and declarations, requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."[66]   In reviewing a motion for conditional certification, the court does not weigh the evidence, resolve factual disputes,[67] or rule on the merits of plaintiffs' claims.[68]  The court "requires nothing more than substantial allegations."[69]  And judges in this District have declined to proceed to the second

---

[64]*Id.* at 1103; *Garcia v. Tyson Foods, Inc.*, No. 06-2198-JWL, 2009 WL 352603, at *4 (D. Kan. Feb.12, 2009).

[65]*See Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty., Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *2 (D. Kan. July 27, 2005) (applying first-stage analysis even though discovery had been conducted).

[66]*Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

[67]*Barnwell v. Corr. Corp. of Am.*, No. 08-2151-JWL, 2008 WL 5157476, at *5 (D. Kan. Dec. 9, 2008) ("the fact that evidence exists negating plaintiffs' claims does not warrant the denial of conditional certification where plaintiffs nonetheless have presented substantial allegations supporting the existence of a policy"); *Geer*, 2005 WL 2648054, at *2 (deciding to only consider the pleadings and affidavits filed by plaintiffs because, "at this point, the Court is not prepared to weigh the evidence"); *see also Thiessen*, 267 F.3d at 1106–07 (noting that, in applying the stricter second-stage standard, trial court weighed the evidence and made factual findings in determining whether plaintiffs were "similarly situated," and as a result "the district court essentially deprived plaintiffs of their right to have the issues decided by a jury, or to at least have the court determine, under summary judgment standards, whether there was sufficient evidence to send the issue to the jury.").

[68]*Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166 (D. Kan. 2006).

[69]*Thiessen*, 267 F.3d at 1102.

stage before notice is given.[70]

The Court finds that Plaintiff has substantially alleged the existence of a single policy that applied to all servers employed by the Wichita IHOP on Ridge Road.  Plaintiff alleges that Defendants had a policy of taking a tip credit with respect to all hours worked by servers, even when they worked full shifts as expediters.  Plaintiff alleges that the expediters did not have any customer interaction and thus, were engaged in a non-tipped occupation.  Plaintiff alleges that the servers were not provided with sufficient notice under the FLSA and the Department of Labor regulations about the tip credit.  Plaintiff has submitted declarations by Plaintiff and Geraci that they were subject to the same tip pooling and notice policy.  The Court finds these to be sufficient under the binding authority of this circuit.[71]

The Court also finds that Defendants' motion to strike Alycia Garaci's Declaration must be denied.  The motion to strike challenges whether Geraci is similarly situated to Plaintiff because there is evidence that Geraci signed a form acknowledging that she was given notice of Defendant's tip sharing policy.  But the Court does not resolve factual disputes at this stage of the collective action proceeding, or rule on the merits of Plaintiff's claims.  Under the lenient standard that applies to Plaintiff's motion for conditional certification, the Court only looks to whether there are substantial allegations in the Complaint and supporting affidavits that the putative class members were together the victims of a single decision, policy or plan.  Geraci asserts in her declaration that Defendants did not disclose to her, or to her knowledge any other

---

[70]*Renfro*, 243 F.R.D. at 434 & n.4; *Gieseke*, 408 F. Supp. 2d at 1167 (noting significant prejudice to putative plaintiffs if the first stage were bypassed).

[71]Largely for the reasons set forth in Plaintiff's reply memorandum, the Court declines Defendants' invitation to follow the *Johnson v. Holding Corp.* decision out of the District of Maine.  802 F. Supp. 2d 227 (D. Me. 2011).

server, the items required by 29 C.F.R. § 531.59.  She also states that she was a server during the proposed time period who was subject to the tip pool policy.  These are sufficient substantial allegations of a common policy.

Defendants' challenges to conditional certification are largely premature.  And as discussed in the summary judgment ruling, there are genuine issues of material fact that exist on Plaintiff's FLSA claims at this early stage of the litigation.  To the extent Defendants wish to raise factual challenges to whether the putative plaintiffs are similarly situated, they are appropriately raised at the stricter second-stage of the conditional certification process. Plaintiff's allegations, supported by the declarations, meet the low threshold for sending notice to other putative plaintiffs.[72]

The Court therefore grants Plaintiff's motion to conditionally certify a collective action for: all Servers and other persons with similar job duties and compensation structures, employed by Defendant West Side Restaurant, LLC, at the IHOP located at 515 S. Ridge Cir. Wichita, KS, 67209, within three years from the date of certification, to the present, who were not paid all minimum wages and overtime due and owing.

The Court grants Plaintiff's request to toll the limitations period from the date of the filing of Plaintiffs' Motion for Conditional Class Certification until the close of the opt-in period

**C.   Notice**

The benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed

---

[72]*See, e.g., Renfro*, 243 F.R.D. at 434.

decisions about whether to participate."[73]  Plaintiff has attached proposed notice and consent forms to her motion.[74]  Defendants raise no objections to these proposed forms.  They are modeled after the notice provided by the Federal Judicial Center.  The Court approves of the form of the notice and finds that ninety days is an appropriate period of time in which to require putative plaintiffs to opt in.

In preparation for the distribution of notice to putative plaintiffs, Defendants are directed to provide Plaintiff's counsel with a list of all present and former employees within the designated classes, with last known addresses and telephone numbers, by the date specified below.  The Court denies Plaintiff's request for dates of birth and partial social security numbers.

The Court also grants Plaintiff's proposed distribution of the notice by mail and by posting at the subject IHOP.  These are both reasonable methods to achieve the goal of reaching all affected employees.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 44) is **denied**.  Plaintiff's cross-motion for summary judgment raised in the response memorandum is likewise **denied**.  Plaintiff's Motion to Strike Reply (Doc. 57) to the Defendants' motion for summary judgment is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Conditional Certification (Doc. 31) is **granted**.  Defendants' Motion to Strike Consent (Doc. 42) is **denied.**  The Court conditionally certifies Plaintiff's collective action under § 216(b) of the FLSA for the following class of persons: all Servers and other persons with similar job duties and compensation

---

[73]*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

[74]Doc. 32-9, Ex. I.

structures, employed by Defendant West Side Restaurant, LLC, at the IHOP located at 515 S.

Ridge Cir. Wichita, KS, 67209, within three years from the date of certification, to the present,

who were not paid all minimum wages and overtime due and owing.

Plaintiff Carolyn Porter is designated as the class representative and Plaintiffs' counsel

shall act as class counsel in this matter.

**IT IS FURTHER ORDERED** that **within fourteen (14) days of the Court's Order**,

Defendant must provide to Plaintiff  a list in electronic and importable format, of the first and

last names, last-known addresses, telephone numbers, dates of employment, and location of

employment of all members of the putative class.

**IT IS FURTHER ORDERED** that Plaintiff shall issue her proposed notice to all Servers

and others performing similar job duties and subject to similar compensation practices employed

by Defendant at the IHOP at 515 S. Ridge Cir., Wichita, Kansas, at any time within the past

three (3) years, with a 90-day opt-in period to commence on the date that Defendant provides the

required information about class members to Plaintiffs.  Defendant shall post the notice of this

lawsuit in conspicuous locations where it employs Servers, and others with similar job duties and

subject to similar compensation policies.

**IT IS SO ORDERED**.

Dated: April 24, 2014

       S/ Julie A. Robinson             
       JULIE A. ROBINSON
       UNITED STATES DISTRICT JUDGE